Neu Cloud v. IBM. Good morning. I'm Nicole Saharsky representing Neu Cloud. The Defend Trade Secret Act was designed for a case just like this one. Neu Cloud shares trade secrets with IBM as part of a joint venture. IBM turned around, gave that information to a competitor. The competitor used it to destroy Neu Cloud's business. The district court erred in dismissing the complaint. It ignored key allegations in the complaint and made legal errors. And IBM does not defend significant aspects of this case. So what do we do with the district court's decision? It should be reversed. Starting with the statute of limitations issue. We're proceeding. Our claim is under the DTSA. It has a three-year statute of limitations. We filed within three years. And so that makes the claim timely. IBM wants to use a contractual provision to circumvent the federal statute of limitations. But if that contractual provision even applied, Chinese law would apply and say that you could not cut off the statute of limitations by contract. The district court didn't address this. It actually went much broader and said that the contract's choice of law clause meant that Chinese law completely displaces the DTSA cause of action. The court didn't really explain that, but that's an extraordinary holding to say that a choice of law clause, which I think are routine and everyone understands, you know, tells what law governs interpretation of a contract, would have the effect of actually displacing all of the generally applicable law in the forum. And the Supreme Court has considered whether to read a choice of law clause in that way in the Mitsubishi case, and it said that it wouldn't hesitate to condemn that as against public policy. Well, only if it's preventing the vindication of some important right. But the general rule would be that all claims arising from the confidentiality agreement would be governed by the choice of law clause, wouldn't it be? Well, but this is a claim arising under federal law. It's arising under the DTSA. And so we use the DTSA's three-year statute of limitations. But doesn't it arise from the confidentiality agreement? Aren't you? We're not bringing a claim for breach of the confidentiality agreement. If the confidentiality agreement didn't exist, we would still have the claim under federal law, the DTSA, which requires us to show that there was a trade secret and that it was misappropriated. And those are the elements that we've pleaded in the complaint. And so we think, you know, where the district court went wrong was saying that this choice of law clause, which everyone understands applies to interpretation of a contract, precludes this separate claim that we're proceeding under under federal law, that it precludes all of the generally applicable federal law. I understand that argument that in reading the complaint, it's a single count DTSA claim. But the statute of limitations really is not an issue we need to address if we were to determine that, in fact, the district court was correct that the complaint failed to state a claim properly under DTSA. And I'm particularly concerned about the second prong of that. And I understand that the district judge found both that this type of information could not be a trade secret, but secondarily, that it was not treated as a trade secret. And therefore, your client failed to assert a proper DTSA claim. Can you address that aspect? Why did the district court get that wrong? Sure. I'd like to take those each in turn. First, in terms of whether this customer information can be a trade secret, the district court said no, but that's contrary to governing law and IBM's not defending that. So I think what your question is referring to is the next thing that the district court held was with respect to whether NewCloud took reasonable measures to keep it confidential, which is required under the DTSA. And we pleaded that in the complaint in several paragraphs. And I'll point the court to those paragraphs. But I would say that they generally fall into two categories. The first category is measures that NewCloud itself took within the joint venture to keep the information confidential, including policies and procedures that limited the information to certain people, that said that the information had to be encrypted digitally, and that physical copies had to be shredded. So those are the allegations about within NewCloud, and those are the paragraphs in the complaint 91 and 109. But then don't you have to allege that it was treated as such? And the district court found that there was no evidence whatsoever that these records were marked in the way that they were supposed to be marked by the agreement. How do you respond to that? So that's the second point I wanted to get to, which is when the information was provided to IBM that it needed to be treated as confidential. And under the agreement, it either had to be marked as alleged or identified as confidential at the time of disclosure. And in the complaint, we allege, and I'd point you, for example, to paragraph 111 that says that when the- I'm sorry, did you say 111? 111, 111. When this trade secret information was provided to defendants, NewCloud asked the defendants not share this information with anyone else. And the defendants used this information only in connection with the NewCloud joint venture. Defendants agreed. So that's designating it as confidential when it's provided and that the defendants understood that. And that's not the only paragraph that says that. It's also in paragraph 76 of the complaint, which also states IBM's agreement, paragraph 90 of the complaint, and paragraph 92 of the complaint. But those state the agreement. There's no dispute that the agreement called for certain action to occur. But did- I thought the trial court's finding was that you can't make out a claim because you can't- there's no proof that it was treated as required by the confidentiality agreement. No, I thought that- with respect, I thought the district court's reasoning was that it wasn't designated as confidential at the time that it was provided. And there's no- I don't think there's a question as to whether IBM treated it as confidential, at least up to the point where it gave it to a third- another party, the rival joint venture. That's the second part of the DTSA claim, which is the misappropriation. But the district court thinks that you didn't comply with the labeling requirement of putting in the labeling. But you're saying the agreement actually says it doesn't have to be labeled necessarily as long as at the time that it's transferred, they said it needs to be treated as confidential. And you say, well, you have this agreement in place, and you did this other work to make sure the information's not shared with other people. Right. And so I'd point you to the joint appendix just if you want to look at the exact requirement about designated as confidential. They're at pages 1136 and 1165. And that clearly says either mark with a legend or identify as confidential at the time of disclosure. And that's what I was reading, for example, one of the allegations. And you state your argument is the complaint plausibly alleges the latter. Yes. I just think the district court did a- respectfully did a cursory analysis here and missed some of these key allegations. And a close reading of the complaint makes clear that we've pleaded both a trade secret, including that we took reasonable measures to protect it. And then, of course, there's the second part of the trade secret violation, which is the misappropriation, that the defendants received the trade secret information through the special bidding process. That's on paragraph 104, for example, that they gave it to a rival. And specifically how they gave it to a rival had two employees of IBM China go to the rival joint venture and then use the trade secret information to hurt New Cloud's business. And those are in paragraphs 80, 95, 96, 99, 100, 116, and 117 of the complaint. And I'm just reciting those because I want to make clear that these allegations are in the complaint. And I don't think that the district court's analysis of this, which suggests that they- that overlooked these, was a fair analysis. Can I go back to the timeliness question? So you said that you're just making a DTSA claim. It's not about- it's not from the confidentiality agreement. You're not alleging a breach of the confidentiality agreement. But we're talking about the confidentiality agreement to determine whether there is the theft of the trade secret because that governs the obligations between the parties, right? Well, the reason that we're talking about it is because under the DTSA, it says that you have to take reasonable measures to keep it secret. And the courts have interpreted that if the parties have an agreement, it informs what are the reasonable measures- The agreement informs what the reasonable measures are. Anyway, to go back, so you have in the confidentiality agreement this provision that says Chinese law would govern, interpret, and enforce rights, duties, and obligations arising from or relating in any manner to subject matter of the agreement, right? So why isn't it the case that a claim of theft of trade secrets based on a violation of the terms of the confidentiality agreement is relating to the subject matter of that agreement? Because the subject matter of the agreement is protection of the confidential information by a contract. It's not protection of trade secrets, you know, under federal law or stopping misappropriation of trade secrets. I just think it would be an odd reading of a choice of law clause, which are pretty common and that everyone understands to provide the law that governs the contract, to say that it displaces the law that applies outside of the contract. You know, the DTSA is something that would apply if this contract never existed. And that's where, you know, we've got to... Yeah, but so are causes of action about, I mean, maybe there's like an unfair competition claim about, you know, taking confidential information that would be directly, you could say it parallels the terms of the confidentiality agreement, even though it's a separate cause of action, wouldn't you still say that that relates to the subject matter of the confidentiality agreement? Well, I think here we're talking about a federal statutory claim and that that's what makes it different to say that the choice of law clause would somehow preclude all existing federal statutory claims. And, you know, I might give a different example. You know, you wouldn't, at least we wouldn't think it would make sense to read this clause. For example, if when we provided the trade secret information, say that it included copyright information and IBM, like, violated our copyrights, you know, would you say that we couldn't bring a copyright claim because that was precluded by, you know, this choice of law clause? I just don't think that that's how courts read choice of law clause. We've cited cases, of course, in the lower courts, but the Supreme Court... So what do you think the choice of law clause does? So if Chinese law governs, interprets, and enforces rights, duties, and obligations arising from or relating in any manner to it, do you think that only applies if you're alleging a breach of the agreement? It would be claims arising out of the contract. So, yes, something like breach of contract. I think that's a natural reading of a choice of law. But only breach of contract. Well, I'm trying to think of what other claims would arise out of the contract, but I guess the point is that... There are lots of statutory causes of action you might have about taking somebody else's confidential information, but you're saying that doesn't relate to the subject matter of the confidentiality agreement unless it is specifically a claim for breach of the agreement. I think it would have to arise out of the agreement, and that's not... The DTSA claim doesn't arise out of the agreement. It separately arises out of federal law. And I guess I would just, you know, kind of thinking this through, point the court to the Supreme Court's analysis. For example, in the Mitsubishi case, there it was talking about enforcement of an arbitration clause, and there's a question mark about whether a choice of law clause would mean that you couldn't bring a federal antitrust claim when you were in arbitration at the Supreme Court. Is the premise of that analysis that otherwise the choice of law clause would apply to look to the foreign state's law, but we might create an exception to that rule if we think that you're, you know, nullifying some federal right? I think it reflects a different proposition, which is the choice of law clause applies to interpret the rights in the agreement and causes of action relating to the agreement, and it doesn't apply to other freestanding causes of action under federal law, which in that case was an antitrust claim, and in this case is a claim under the DTSA. It would just be an extraordinary thing to say that you could displace all of federal law, any other claim that the parties might have related to their relationship in federal law, whether it would be a tort claim, a copyright claim, anything else, as a result of a choice of law clause. I just don't think that that's how choice of law clauses are understood, and it would be like a tremendous gotcha to say that a choice of law clause not just governs the interpretation of the contract, but applies so broadly outside of it. And so, you know, we think the district court got that wrong, and I guess what I would say is, if you think there's any question there, this is an affirmative defense that IBM is raising, the statute of limitations and affirmative defense. The burden is on them, so if it's not clear, I think it means that our claim proceeds. You know, we're coming under the DTSA, there's a three-year statute of limitations there, and we're within the three-year statute of limitations. I have a question. How did the district court get wrong? It also based its decision on the fact that if you had made any claims of misappropriation, the exceptions apply, because things like what's in the memories of employees do not apply to misappropriations of theft of trade secrets. How did the district court get that wrong? Right, so you're referring to the part of the confidentiality agreement, this is Section 4, that says that IBM, in its business activities, may use ideas, concepts, and know-how retained in the memories of its employees. And I think there's three problems with relying on that here. First of all, the detailed customer information that we transmitted through the special bids process isn't ideas, concepts, and know-how, it's very detailed information. And I'd suggest, for example, you know... How is it not know-how? Well, I just wanted to give an example. Like a know-how would be to know if you were going to do business in China that you'd have to go through an intermediary. That could be kind of a general concept. Wouldn't it also be know-how, what product your clients want and what they're willing to pay for it? I think that at that point you're not really talking about general ideas, concepts, and know-how, you're talking about the specifics. So instead of talking, for example, about the fact that you need to go through an intermediary in China, the information here indicated the specific intermediaries you'd have to go through and the specific products that they're interested in, the specific amounts that they're willing to pay, and actually a whole competitive analysis of their situation that justified... You know, the special bid process was to try to justify a discount on the IBM products. So it was a whole competitive analysis of the situation to say, here's why we think this discount is appropriate. So that's way more than, you know, ideas, concepts, and know-how. But even if you thought that it might qualify as that, I think there are two other independent problems. One, it has to be retained in the memories. And here, we pleaded that all of that specific information was transmitted in documents. And I think it's a reasonable inference to say that the documents were being used here since that's how the information was transmitted. That's not in memories. And then there's a second independent... The inference of the complaint is that it's not just that it was in their memories, but they took documents with them from one place to the other. I think you can reasonably infer that from the complaint. There's no allegation that they took documents from one place to the other. No, I think you'd have to infer that from the complaint. But we think that that's a reasonable inference. And then I just would like to add... But it also doesn't say that anything was in their memories, I suppose. You're saying that the district court made an inference that was not in your favor. Yes, that is the problem, that the district court drew an inference against us. It doesn't say anything about memories either. I would just note to finish the answer that there's kind of a... Wouldn't you have to allege, though, that if that is your position, that documents were taken, why not allege it? And you had two opportunities to do so, right? Well, the allegations are that the individuals were instructed to go to the rival joint venture and that they used the trade secret information in the rival joint venture, that's in paragraph 117, for example, to poach customers, essentially. So you'd have to make some inference as to the exact form of that information. But I think we do say... But why would you make... Well, I suppose the complaint should be read in the light most favorable to your client. But why not fix that and say if that's your position, that they actually took the documents, say it? Well, I mean, we're under a notice pleading standard here and there are a lot of other details in terms of how this misappropriation occurred, including that it actually named the two individuals who were instructed to go to the rival joint venture. And so I think if the court looks holistically at these allegations, there are several paragraphs of the complaint that address it and that they make clear that that's what was happening here. I just want to add one... Do you mind addressing the res judicata argument? Certainly. So in the res judicata... With respect to this argument, it's one the district court rejected and we think that the district court got that right. The question under New York law is whether the cases are so interrelated that you would have had to bring this claim in the state court case. And that depends on whether the evidence is the same and whether the facts essential to both claims... Or whether the facts essential in the first case are also in the second case. And I just want to discuss the differences between these cases. The state case is not about trade secrets. It is a broader case that involves both Team Sun, which is the other party in the joint venture, and New Cloud, which is the joint venture, bringing claims for unfair competition, unjust enrichment, and breach of fiduciary duty, related to them making the investment in this joint venture and this entire relationship, and then IBM's betrayal of the joint venture. Trade secrets are not facts that have to be proven in the first case. There's not a trade secret claim. And you can decide the whole state case without really ever saying anything about trade secrets. But isn't it part of the same transaction of taking everything you... all the information you developed as part of the first joint venture and taking it to the second joint venture? Didn't that also include the trade secrets? Well, I think the state case is much broader and that the evidence is different and that it's not just... I don't think that the test is just, you know, are they related? It's really, is there different evidence and different essential facts in the two... Is that part of the unfair competition, the use of the trade secrets? No, the unfair competition comes... I think is more broad based on the other things that IBM did to betray the joint venture. And if you look at, for example, you know, not only are the causes... You make these allegations, right, in that complaint that the unfair competition is you developed all of this know-how and concepts and so on for the first joint venture and you just took it to the second joint venture and that's unfair competition. But you could have thrown in the trade secrets, right? Right, but that's... So if the test is what you should have brought, why shouldn't we say that you should have... Why wouldn't the New York courts say you should have brought the trade secrets claim as part of that if you're talking about everything that was taken from the first joint venture to the second? So the test is not, could you have brought it in that case? Like, is it theoretically... I know it's should you have, though. Right, it's should you have and the New York courts, including in the Inter Oceanica case and the Chen case, which we rely on, make clear that this has to be a pragmatic inquiry that really asks whether you... They're so intertwined that you'd have to bring these two cases together because the courts of... The New York courts are hesitant to cut off your ability to bring a cause of action, which would be the implication of applying res judicata here. And when you look at these two, we don't think that they're so entwined that you'd have to bring them together. The gravamen of the complaints of the cases is entirely different in terms of the inducement to spend money and all of the activities on the joint venture as opposed to this case, which focuses on the trade secrets. There's also different relief that's requested between the two cases, including that in the state court case, it's seeking all of the money expended on the joint venture and the amount that was... Enrichment. Whereas here, it's just damages from the misappropriation of the trade secrets. So I take your point, Your Honor, that those claims could have potentially all but been brought in state court, but the question is really whether they are so intertwined that they had to be brought in state court. And the district court didn't think so and we didn't think so. We don't think so either. Thank you. The reserve rebuttal. Yes, thank you. Thank you. May it please the court. My name is Kevin Reed with Quinn Emanuel. I'm here on behalf of the appellees. Before the district court, Newcloud tried to avoid a ruling that its DTSA claim was barred by continually shifting its position about which agreement the claim arose from or related to. Ultimately, the court found it doesn't really matter because the claim is time-barred irrespective of what agreement it relates to. As the court put it, there are three possible outcomes here. Plaintiff loses in each one. Now, before this court, Newcloud finally commits to a position and says that it gave IBM the alleged trade secrets pursuant to what's been called the business partner agreement. And that agreement, which is governed by New York law, includes a limitations provision that bars parties from asserting any claim relating to the agreement, not simply arising out of, but even relating to, more than two years after accrual. Newcloud does not dispute that its DTSA claim relates to the business partner agreement. It does not dispute that it brought its claim more than two years after accrual. And it does not dispute that the contractual provision shortening the DTSA's three-year limitations provision to two years is enforceable under the governing New York law. It offers just one argument as to why its claim is supposedly not time-barred. It contends that Chinese law prohibited IBM and Newcloud from agreeing to shorten the DTSA's statute of limitations. I'm interested in pursuing that, but actually that's not the argument we just heard. The argument we just heard is that this doesn't actually even arise from either the confidentiality agreement or the BPA, but it's a federal cause of action. And so we should just apply the statute of limitations that applies under federal law. So why don't you tell me first why that is mistaken before we talk about which agreement it arose from. Sure. So let's start with the choice of law provision that's at issue here. In the confidentiality agreement, this is Joint Appendix 1137, paragraph 8G, both parties agree to the application of the laws of the People's Republic of China to govern, interpret, and enforce all of your and our rights, duties, and obligations arising from or relating in any manner to the subject matter of this agreement without regard to conflicts of law principles. And if you go to the very first page of the agreement, it describes the purpose of the agreement as, quote, protection of confidential information. So the subject matter of this agreement is protection of confidential information. And I frankly don't see any way you could read this choice of law provision to say anything other than that if you're going to assert a claim that relates to protection of confidential information, such as trade secrets, you are limited to Chinese law. Now, my colleague suggests that this is some sort of novel thing, that the idea that a choice of law provision could preclude you from asserting a federal clause of action is an anomaly. We know that's not true because the cases tell us. First, you have the Amendus case, which is probably the most on point here, where the First Circuit held that a choice of forum clause and a choice of law clause mandating litigation in Denmark precluded the assertion of a DTSA claim. You have this Court's opinion in the Martinez case where the Court said that an employment agreement that mandated English law in English courts precluded a plaintiff from asserting a clause under the ADA. You have the Roby case in which this Court... Okay, so we have these cases where we apply the choice of law clause. So then I guess the argument is even if this claim arises from the confidentiality agreement, why doesn't Chinese law displace the two-year statute of limitations? Because Chinese law displaces the entire statute. Oh, so it would. So you're saying if the claim arises from the confidentiality agreement, then Chinese law does displace the two-year statute of limitations, but you think it also displaces the DTSA claim. Yeah, I think this is the dilemma that the Court found that Nuklaut had put itself in. If this claim relates to the BPA, then the two-year statute of limitations applies to the DTSA. So would you agree that if there was an important public policy, the Mitsubishi, if there were an important public policy issue at stake, that wouldn't be the case? Not necessarily, but it's a possibility. If you look at the Amendus case, the Court there said that it looked at the public policy argument and it said, first, that the public policy underlying the extraterritorial application of the DTSA is to protect the theft of American trade secrets abroad. And the Court, acknowledging that policy, didn't find it sufficient to override the contractual choice of law. But why is it bad for taking the theft of American trade secrets when, in fact, the extraterritoriality provision talks about applying extraterritorially when the offender is an American individual or company? It seems like Congress wanted accountability for American entities also. That's when it applies extraterritorially, right? I think that may well be a subsidiary purpose, but I think the Amendus Court probably had it right that Congress was motivated by protecting American companies and American trade secrets. But again, the Court in Amendus found that policy was not sufficient to override sophisticated party choice in a contract to contract out of the DTSA. Now, the other thing about public policy, you'll see in some cases... So why is that right? So, I mean, if the DTSA is Congress deciding that actually, specifically, foreign law is not adequate to protect trade secrets, and so we're creating this separate mechanism, why didn't Congress say we disapprove of the application of foreign law when we're talking about trade secrets? Your Honor, I don't know the answer to that question. There's no evidence in this record that Congress somehow meant to preclude parties from contracting out of the DTSA if they chose to. But if Congress... I mean, in the findings of the DTSA, doesn't Congress decide that the foreign law is inadequate to protect trade secrets? I don't think... In fact, the DTSA also requires these regular reports from the DOJ about how foreign law is operating and whether it protects trade secrets or not. I mean, it does do an investigation into the adequacy of foreign law. So why doesn't that suggest that actually Congress was worried about the application of foreign law to displace the protection of trade secrets? Your Honor, I don't know that you can infer that from the mere passage of the statute. The securities laws are sort of analogous. The securities laws are meant to protect American investors from misrepresentations by parties both here and abroad. But in the Roby case, the court found that when you agree that a set of American investors in a Lloyds syndicate had signed an agreement agreeing to arbitrate claims in England under English law, that they had contracted themselves out of the American securities laws. So the cases do have a thread where if applying the choice of law clause would deprive the plaintiff of any sort of effective remedy, then you might look at not giving it effect. But there's no evidence in this record here that the Chinese law doesn't provide a manner of protection. So you agree that if it were, if it could be shown that they wouldn't have any effective remedy for the theft of trade secrets, then they might be able to use U.S. cause of action even though Chinese law otherwise wouldn't, would apply because of the principle you just articulated. You're right. I think they would have that argument. I don't know that there's a fact. If those were the facts, they would have that argument. We didn't litigate it. I'd want to think about it more. But certainly, I don't think it arises here because they didn't make the argument. They put in two Chinese law affidavits, neither of which made any claim that Chinese law was inadequate with respect to the protection of trade secrets. And they try and evade this by saying, well, it's an affirmative defense. It's your burden. But that turns it on its head. When you have a facially valid contractual provision, it's the party who's seeking to avoid enforcing it through, you know, grounds of public policy or duress or some other sort of affirmative basis. They have the burden to show why a facially valid contract signed between two  shouldn't be enforced. So I take your point about the burden, but you're saying the record doesn't tell us one way or the other whether there is effective protection of trade secrets under Chinese law. They never argued that it didn't, and so it wasn't litigated. Okay. Um, I guess I would just move to the question of whether they adequately alleged misappropriation, and then I want to talk briefly about race judicata since Judge Livingston, you raised it. The point on adequately pleading misappropriation is that when you look at this complaint, what it essentially says is two employees left to go to a competitor, and that competitor subsequently did business with 10 percent of our customers. And the cases we cite in our brief make clear that's not enough. You have to do more to satisfy  plausibility standard. Um, to simply say we believe that this happened doesn't get you over the line. And so I would urge you to look at those cases. Well, it's not just the movement of the two employees, it's also that it turns out that the new joint venture takes 10 percent of the customers that were the subject of the special bids, right? Yeah. That's the sum of it. But I think the cases we cite make the point that if it was enough to allege that one employee moved to another business who's competing in the same market, and then that other business takes a small number of customers, then you'd have these claims exploding. On race judicata, Your Honor, I think I'm glad you raised it because we've been baffled why the court didn't dismiss on this. My colleague suggests that the standard is did the claim have to be raised in the prior action? That's not the standard. As you alluded to, Judge Menasci, the question is transaction. Did it arise out of the same group of facts? And I would just urge you to look at the in our brief, page 48 of our brief, we cite the opening paragraph of both complaints. The New York complaint says, over a number of years, defendants played a bait-and-switch game with Team Sun and New Cloud, repeatedly inducing Team Sun and New Cloud through later breach contracts to expend resources and provide defendants with access to sensitive, confidential customer information which defendants then secretly used to create competing ventures in China. That's the New York complaint that was dismissed. Their federal complaint says, and this will sound familiar, over a number of years, IBM has played a bait-and-switch game with New Cloud, repeatedly inducing it to provide IBM with access to sensitive, confidential customer information which IBM then misappropriated and secretly used to create competing ventures in China. It's the same thing. It's true that the opening of the complaint seemed very similar. I agree with that. It talks about confidential information, but then the state complaint doesn't even mention the BPA or the confidentiality agreement, right? So if our discussion previously was right, that this arises from the confidentiality agreement, and the fact that they're not even mentioning that transaction between the parties in the state complaint, shouldn't that suggest that maybe it is a different transaction? I don't think it's read that literally, Your Honor. I think the transaction here is the provision of confidential information in the course of their business relationship. And I would urge you, I apologize, I don't have the JA site framed in front of me, but if you would look, it's a district court document, 48-1. It's the exhibit to our motion to dismiss the First Amendment complaint. There's a document There's a chart there which lists 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. At least 11 places where the allegations and the complaints overlap. They split this claim deliberately. They wanted two bites at the apple. But the point when you do that is you take a risk. And if you lose the first bite, you don't get the second bite. Can I ask you a question, counsel,    a valid DTSA claim had been made? First, are you challenging, are you supporting the decision to dismiss the First Amendment complaint? Second, are you supporting the district court's finding that this wasn't a trade secret at all? Yes. Absolutely. The judge found that they did not comply with the contract's requirements. First of all, the DTSA as an element of the claim requires you to allege that you have a trade secret. And it also defines a trade secret as information that you took reasonable measures to protect. The trial court seemed to be saying that client lists like this cannot be a trade secret. Do you agree with that? I mean, there are cases that say precisely this type of information does qualify  a trade secret, whether or not they treated it as such. Candidly, Your Honor, we didn't defend that in our brief. I think there are other cases that you would. But what the court did say, well, first, the cases say that where you have an agreement that specifies the manner in which you were to protect confidential information, you have to, at a minimum, follow that. And the court was correct that they didn't. Because A, they didn't label it. They fall back on a provision that says you could also designate it confidential at the time you provide it. But remember here, there were 89 instances they alleged. Well, look at your complaint. I mean, it doesn't say that they didn't label it. It doesn't say that they said it was confidential. It also doesn't say that they didn't. Why isn't the plausible inference from their complaint that they did say it was confidential? I mean, they went to the trouble of having a confidentiality agreement, and there's this information about how they wanted to make sure it wasn't spread widely in IBM. So why isn't that enough where the plausible inference in their favor is that they did do something to indicate to the opposite party that it was to be treated as confidential? Well, because they pled what they did. They pled when we gave them this information, we asked them not to share it with other people. They don't specify when they said it. They don't specify it to who. And again, there were 89 separate instances they alleged where they provided these special bids containing the information. And I think it's not remotely within the spirit of the text of the agreement to say an agreement that says you either have to label it specifically or designate it at the time of disclosure. You can't, I don't think, stretch that to say that you can sort of make an offhanded start at the beginning of the relationship to say please don't share this. And then when you subsequently 89 times provide confidential information, you're in the clear even though you do nothing else. What about the trial court's finding that there was no adequate allegation of misappropriation because the exceptions applied because this related to two employees. Your opponents seem to say that the complaint is sufficient because you  from it that they are alleging that IBM actually, or that these employees actually took information out. Meaning the actual list's customer list's out. Right. I didn't read the district court as saying they hadn't alleged that people had taken information. I think the court said they hadn't taken trade secret information and we've discussed how I think on the customer list point. The district court does say the agreement allows people to take stuff that's in their memories and that's why it's not a breach. So it does seem the district court thought that or was it making the inference that it was just whatever was in the employee's head as opposed to them taking documents, right? Right. So the district court did assume that it was something in their memories as opposed to documents. It did. Unless the court has further questions, I'll thank you, Your Honor, for your attention and urge that you affirm the judgment of the district court. Just a few points, Your Honors. First of all, starting on whether we pleaded, properly pleaded a DTSA claim. I mean, we pleaded that what the trade secrets were specifically. We named the employees who took the trade secrets to the new company. We said that they used the trade secrets that they obtained through the special bidding process to hurt our business. That's in paragraphs 80, 104, 117, and many others of the complaint. I think respectfully, what IBM is trying to do here is apply some of  things that we did not apply in this context. We gave plenty of details about the misappropriation. Second, on the choice of law clause, our position is simple. This is a federal cause of action. The federal cause of action is a three-year process. This question about whether you could read the choice of law clause arose for the first time in the motion to dismiss reply brief that IBM filed. We don't think you can read a choice of law clause which governs the interpretation of the contract to preclude a separate cause of action. We think this means that IBM has not met its burden. At a minimum, there should be a remand. That issue never came up. There was one sentence in the reply brief and that was it. There was no opportunity to discuss that issue. There's no evidence in the record on it. The experts didn't address it. I can't opine on that and shouldn't have to since it's IBM's burden. What I would say is that IBM's cases where they suggest you can read a choice of state court complaint. It's in the J.A. starting at page 676. It would be an extraordinary thing to say that the state court didn't hold that. We're at the motion to dismiss stage. There's not a heightened pleading standard. The district court drew inferences against us. We should have the opportunity to at least try to proceed with these claims. We recommend that the court reverse. Thank you both. We'll take the matter under advisement. Well argued.